## Stoner v. State of Missouri.

Where a free negro, who had been duly tried and committed, under the 21st and 22nd sections of the "Act concerning free negroes and mulattoes," was brought before the supreme court on a habeas corpus;—that court declined looking into the correctness of the decision made by the committing magistrate, the legislature having provided other modes for reviewing, and if necessary, correcting the same; and neither the letter or spirit of the habeas corpus Act having any reference to commitments *after* regular trial by competent judicial officers.

Seaton Stoner, on application for the writ of habeas corpus.

*G. A. Bird*, attorney exparte, Seaton Stoner.

1st. The petitioner insists that every person born within the jurisdiction of the United States, (and not of alien parents,) of whatever color, is a citizen of the U. States, and is entitled to all the privileges and immunities of citizens in the several States;—see art. 4, sec. 2, U. S. constitution.

2nd. That the seizure of any free person, simply *because he has negro blood in his veins*, is in violation of the 4th, 5th, 6th and 7th sections of the 1st article of the amendments of U. S. constitution.

3rd. That the imprisonment of Stoner for the causes stated in the commitment, is against the whole letter and spirit of our constitution—against the rights of man as contained in the declaration of our independence, and against the declaration of rights as contained in our own constitution, sec. 7—see declaration of rights.

4th. If it is an offence for a free negro or mulatto to come into Missouri, it is an indictable offence, and this summary proceeding before the Mayor, is void. For our own statute prohibits free negroes from coming into Missouri, and the doing an act prohibited by statute, is an indictable offence at common law;—see 3 Bacon's abridgment, 544.

5th. Stoner is not a mulatto within the meaning of our statute.

*Hudson*, circuit attorney:

1st. The State maintains that the constitution of this State authorizes the general assembly to pass laws to prevent free negroes from coming to, and settling in this State under any pretext, who are not citizens of some State in the Union;—Const., art. 3, sec. 26.

2nd. That justices of the peace, or the Mayor of the

city of St. Louis, have a right to issue their warrant to apprehend free negroes and mulattoes, and to impose fines and penalties for any violation of the act of the legislature concerning free negroes, &c.—R. L. 413, &c.

3rd. That the fines imposed by the act concerning free negroes and mulattoes, is not repugnant to the constitution of this State, nor of the United States, as there are many instances where fines may be imposed and imprisonment inflicted without the intervention or sanction of a jury, as in cases of contempt; also, by act of Congress, aliens in this country failing to remove after notice given, may be imprisoned without a trial by jury;—see act of Congress, 1798 and 1812; Gordon's Digest, 274 and 275.

4th. Each State has a right to prescribe the terms for admitting free negroes and mulattoes into the State—2 Kent's Com. 71 and 2.

5th. A free negro nor a mulatto can be a citizen of this or any other State, without an express permission of the constitution, or some act of the general assembly; 1 Litt's Ky. Rep., 326.

Statement of the case and opinion of the court, delivered by TOMPKINS, Judge.

The warrant of commitment returned by the sheriff in obedience to the writ of habeas corpus, issued on the prayer of the petitioner, shows that he was committed to jail by the Mayor of the city of St. Louis, under the 21st and 22nd sections of the act concerning free negroes and mulattoes, approved March 14th, 1835. Under the provision of the 21st section, the Mayor sentenced the petitioner to pay a fine of one hundred dollars, and to stand committed till the fine and costs are paid.

By the 22nd section it is provided, that whenever any person committed under the provisions of the preceding section, shall not comply with the judgment of the justice before the term of the county court next holden in the county, such court shall cause him to be brought before it, and if he shall not then establish his right to reside within the State, the court, in its discretion, may order, &c. It is admitted by the counsel on both sides, that an act of the legislature has conferred on the Mayor the same powers here granted to the justice of the peace. Here then is a regular and final judgment of an officer, acting in a judicial character under the authority of an act of assembly, whose decisions may, if the petitioner desire it, be revised by the county court at its next term;

and by the 8th section of the 5th article of the constitution of this State, the circuit court has a superintending control over the county court. This judgment of the Mayor, we are required to inspect, and to annul, on the application of the petitioner to be discharged on the writ of habeas corpus. The third section of the fifth article of our State constitution, gives to this court a general superintending control over all inferior courts of law, and the power to issue writs of habeas corpus, and to hear and determine the same. The act to regulate proceedings on writs of habeas corpus, does indeed provide, that when any person shall stand committed for any criminal or supposed criminal matter, he may have his writ of habeas corpus;—see 1st section of 1st article of that act. But it is apparent from the 15th and 16th sections of the second article of the same act, that the commitment in contemplation of the legislature, was a commitment for safe keeping until the accused could have a trial; for by those sections, it is made the duty of the person on whom the writ is served to produce the writ, all and every examination and information in his hands, relating to the commitment; and if no examination have accompanied the commitment, he is required to exhibit the writ to the magistrate by whom the prisoner was committed; and by the 17th section, it is made the duty of the committing magistrate to appear in person at the time and place where the writ is made returnable. It is moreover provided by the 10th section of the third article of the same act, that no court under this act shall in any other matter have power to inquire into the legality or justice of any process, judgment, decree, or order of any court legally constituted, nor into the propriety of any commitment for contempt made by any court, officer, or body, according to law, &c. But it is urged by the petitioner's counsel, that the prisoner is a citizen of the United States, and that, in violation of the 4th, 5th, 6th and 7th articles of the amendments of the constitution of the United States, he is deprived of his liberty. The 7th section of the act concerning free negroes and mulattoes above referred to, exempts citizens of the United States from the operation of this law; and the Mayor of the city of St. Louis must necessarily have found the prisoner not a citizen, before he could have passed sentence on him. And now, this court is called on to assume original jurisdiction, and inquire into the truth of the Mayor's finding in this summary mode of proceeding. Nothing is more plain, than that reason as well as law, forbids this court to discharge

the prisoner on this writ. The presiding judge concurring with me in opinion, the prisoner will be remanded.

M'GIRK, Judge. I concur in this opinion.